IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MARGARET SUE INMON                                                                PLAINTIFF

V.                                                         CIVIL ACTION NO. 1:16CV209-NBB-DAS

MUELLER COPPER TUBE COMPANY, INC.                                         DEFENDANT

**MEMORANDUM OPINION**

This cause comes before the court upon the defendant's motion for summary judgment. Upon due consideration of the motion, response, exhibits, and applicable authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Margaret Sue Inmon, was hired by the defendant, Mueller Copper Tube Company, Inc. ("Mueller"), in 1997 when she was fifty-one years old. Mueller produces copper tubing and operates a facility in Fulton, Mississippi, where it employs over three hundred workers. Inmon alleges that she was wrongfully terminated from her employment on January 5, 2016, because of her age (sixty-nine at the time of termination) in violation of the Age Discrimination in Employment Act and in violation of Mississippi public policy for her reporting of an alleged crime at the plant.

Mueller's Fulton plant is a unionized facility with a collective bargaining agreement that controls the terms and conditions for the hourly employees at the facility. The collective bargaining agreement provides: "It shall be the continuing policy of the parties that the provisions of this Agreement shall be applicable to all employees without regard to race, color, sex, religion, age, handicap or national origin."

Mueller's Fulton facility also operates under a set of Plant Rules setting forth the accepted standards of personal conduct consistent with the safe, successful, and efficient operation of the plant in order to maintain uninterrupted production on the job and to protect Mueller and its employees.

Mueller's plant manager, Mike Baum, who is Vice President of Operations and the highest ranking employee at Mueller's Fulton facility, made the decision to terminate the plaintiff's employment after the plaintiff incurred several infractions of plant rules during 2015. Mueller's policy is to terminate any employee who receives four disciplinary actions within a one-year period.

In 2015, the plaintiff received a verbal warning, a written warning, and a three-day suspension for separate incidents unrelated to each other and unrelated to the fourth incident which ultimately resulted in the termination of the plaintiff's employment. The verbal warning was issued on August 21, 2015, when the plaintiff left shortly after her regular shift ended at 11:00 p.m. despite agreeing to be drafted to stay over until another employee could replace her. Mueller was unable to provide a replacement when the plaintiff left, and, as a result, production on the plaintiff's line was stopped for approximately four hours. The plaintiff acknowledges she was required to work the overtime pursuant to the terms of the collective bargaining agreement but contends no other employee ever received a verbal warning for being drafted for overtime and leaving.

On November 20, 2015, the plaintiff received a written warning after her supervisor, Jon McWilliams, observed the plaintiff sitting down reading a newspaper when she should have been cleaning her area, thereby wasting time and violating Plant Rule 8 which states, "An employee shall not waste time, loaf or loiter on the job or on Company premises during working hours

2

shall he neglect job duties and responsibilities, or do personal work of any kind." On November 23, 2015, McWilliams met with the plaintiff and issued the written warning. According to McWilliams, the plaintiff became very loud and combative, but though she could have pursuant to plant rules and the collective bargaining agreement, the plaintiff did not file a grievance regarding this disciplinary action. Instead, the following day, the plaintiff went to the Fulton Police Department and filed criminal charges against McWilliams under Miss. Code Ann. § 97-35-15, "Disturbing the Peace." In doing so, she completed an affidavit stating that on November 23, 2015, McWilliams "disturb [sic] the peace of Margaret Inmon at 404 Mueller Brass Road by yelling at her and telling her to shut her mouth." McWilliams was arrested while at work at Mueller on December 8, 2015. Plant manager Mike Baum and human resources manager Travis Fisher accompanied McWilliams to the courthouse for two appearances. On December 9, 2015, the day after McWilliams' arrest, the plaintiff was disciplined for "making false, vicious statements, distracting attention of others, insubordinate conduct." Because the plaintiff had already received a verbal warning and a written warning in 2015, she received a three-day suspension for this violation of plant rules.

The plaintiff's fourth infraction of 2015 occurred on December 28 when an investigation into a report made by two employees, Helen Northington and Carol Gable, revealed that on that date the plaintiff had struck Northington with copper tubing. Video surveillance footage of the plaintiff's work area shows that the plaintiff left her machine early, littered the plant floor, and used her cell phone when, according to Mueller, she should have been working, all in violation of Mueller's plant rules. Because the December 28 incident involved multiple violations of plant rules and because these violations amounted to the plaintiff's fourth disciplinary action within a

one-year period, Mike Baum made the decision to terminate the plaintiff's employment, and her employment was terminated on January 5, 2016.

The plaintiff filed a grievance regarding her termination. On May 6, 2016, the union submitted a letter to the plaintiff stating, "After a thorough investigation and careful consideration of any and all evidence and based on the merits of the case, we do not believe we can prevail in arbitration. Therefore, your grievance has been withdrawn from the grievance procedure and will not be arbitrated."

The plaintiff filed the present action on November 22, 2016. She asserts that she was disciplined for frivolous reasons and that she was disciplined for actions that she alleges were common at Mueller and for which other employees were not disciplined. In other words, she asserts that the alleged disciplinary reasons for her termination were pretext for age discrimination.

The plaintiff's second claim, that she was terminated in violation of Mississippi public policy for reporting a crime occurring at the plant, arose from the disciplinary incident with McWilliams and his arrest. The defendant asserts that Baum's decision to terminate the plaintiff had nothing to do with the plaintiff's filing charges against McWilliams and that Baum was not surprised by the plaintiff's actions in filing her police report because she had previously called 911 to report someone's vehicle in what she wrongfully asserted was her personal handicapped parking space at the Mueller facility.

Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of

showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

A plaintiff seeking to establish a *prima facie* case of discrimination in violation of the Age Discrimination in Employment Act must introduce evidence that (1) she is a member of the protected class, that is, over the age of forty; (2) that she is qualified for the position; (3) that she has been the subject of an adverse employment decision; and (4) that she was either replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of her age. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). Once the plaintiff has established her *prima facie* case, the burden of production shifts to the defendant who must then proffer a legitimate nondiscriminatory reason for the employment action. *Machinchick*, 398 F.3d at 350.

"To establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). The plaintiff here has shown her ability to establish a *prima facie* case. The plaintiff was sixty-nine years old at the time of her termination; thus, she is a member of the protected class for age discrimination. The plaintiff had worked at Mueller for almost nineteen years, the last ten years running the same

5

machine. It would be disingenuous to assert that the plaintiff was not qualified for her job. The termination of the plaintiff's employment was, of course, an adverse employment action. Finally, the plaintiff was replaced by Tianna Huddleston, who was twenty-four years old at the time. Huddleston is forty-five years younger than the plaintiff and outside the protected class.

The court now turns to the defendant's proffered legitimate nondiscriminatory reason for the plaintiff's termination and an examination to determine if the plaintiff can show that the reason is pretext for discrimination. As mentioned, the defendant asserts that it terminated the plaintiff's employment in accordance with company policy because the plaintiff received four disciplinary actions within a one-year period. The employer's reason for the adverse employment action need not be persuasive or credible. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002). The defendant's burden is instead to produce "evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). The employer is not "required to persuade the court that it was actually motivated by the proffered reasons." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 901 (5th Cir. 2012). The defendant must only "clearly set forth, through the introduction of admissible evidence, the reasons for [its decision]." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S 248, 255 (1981). The court finds that the defendant has sufficiently met its burden in this regard.

To establish pretext, the plaintiff must produce evidence demonstrating that the reason given for her termination was not the true reason. *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993). Pretext may be demonstrated "through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of

credence.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010)). Evidence of pretext must be "of such quality and weight that reasonable and fair-minded [persons] in the exercise of impartial judgment might reach different conclusions." *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996). Further, under the ADEA, the plaintiff must "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009). "But for" cause does not mean "sole" cause, however. *McDonald v. Santa Fe Trail Trans. Co.*, 427 U.S. 273, 282 n.10 (1976). To meet her evidentiary burden regarding pretext, the plaintiff must show "that [the defendant] did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against [her] on the basis of [her] age." *Swenson v. Schwan's Consumer Brands N. Am., Inc.*, 500 F. App'x 343, 346 (5th Cir. 2012) (citing *Waggoner*, 987 F.2d at 1166). Conclusory allegations, speculation, improbable inferences, unsubstantiated assertions, and legalistic arguments do not constitute an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754 (5th Cir. 2002).

The court finds that the plaintiff has failed to meet her burden of showing pretext. As the defendant argues, the plaintiff's belief that she should not have received disciplinary actions and her belief that no employee received a verbal warning for being drafted and leaving are irrelevant. "A fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith." *Cervantez v. KMGP Services Company, Inc.*, 349 F. App'x 4, 10 (5th Cir. 2009); *Waggoner*, 987 F.2d at 1165-66. Nevertheless, because the plaintiff refutes the four disciplinary actions which

led to her termination and because these actions constitute the basis of the defendant's legitimate nondiscriminatory reason for the plaintiff's termination, the court will address each.

Regarding the plaintiff's verbal warning for leaving after being drafted for overtime in August 2015, Mike Baum testified that certain employees had received warnings for leaving early while others may have been drafted and left on occasions and did not receive warnings. Baum explained the distinction: "I'm aware we do give disciplinary actions for people when they refuse to stay at times, if it stops work production. If it actually stops production of a line, we do give disciplinary action." The plaintiff's asserted belief to the contrary is irrelevant, and the plaintiff does not direct the court to any facts which refute Baum's explanation.

As for the plaintiff's November 23, 2015 written warning for sitting down on the job, the plaintiff has shown no evidence, only conclusory allegations, that the supervisor witnessed other employees failing to perform their work without disciplinary consequences. The plaintiff asserts that this supervisor, McWilliams, who was not her direct supervisor, harassed her as long as she worked at Mueller and "would be hateful" to her. These statements do not contain specific facts and do not constitute evidence showing a genuine issue for trial.

The plaintiff also asserts that the alleged harassment she received from McWilliams motivated her decision to file criminal charges against him. The plaintiff's third infraction of 2015 resulted in her suspension for three days. The defendant asserts that the plaintiff's threat to get even with McWilliams and her bragging to employees that she had filed a police report against him were disruptive to the workplace. Beyond her own accusations, the plaintiff has presented no evidence to substantiate her claim that McWilliams engaged in harassing or criminal behavior, and the court notes that the plaintiff ultimately withdrew a harassment claim she initially asserted in this action and dismissed her criminal charges against McWilliams.

Finally, as to the infractions that resulted in the plaintiff's fourth disciplinary action in 2015 and her ultimate termination, the plaintiff has not identified another individual who committed the same violations of plant rules without resulting disciplinary action. She therefore has failed to demonstrate that a similarly situated employee outside her protected class was treated differently for the purpose of establishing pretext. Further, Gable and Northington, the plaintiff's coworkers, voluntarily reported the plaintiff's inappropriate conduct, and the plaintiff has made no showing that her age was at issue in any way regarding this incident or the others.

The plaintiff bases her belief that Mueller wanted to get rid of older employees on vague remarks to that effect allegedly made by union representatives, not by Mueller management. The plaintiff alleges that McWilliams harassed her because he wanted to get rid of older employees. This allegation is immaterial because McWilliams played no role in the termination decision which was solely made by Mike Baum. The plaintiff also contends that a union official stated that a Mueller representative made statements several years earlier during union negotiations that older employees were costing the company too much in the way of insurance. In addition to amounting to hearsay, this statement lacks temporal proximity to the circumstances giving rise to this case such that even if taken as true, the statement would hold little to no probative value. Finally, the plaintiff asserts that a "buy-out" plan negotiated between Mueller and the union somehow discriminated against employees because of their age. The purpose of the buy-out was to allow the employees working at a lower hourly rate either to leave employment or to receive training for a more skilled position. If the employee chose neither, his or her hourly rate was subject to reduction due to the implementation of a new compensation structure. This buyout provision was voted on and approved by the union employees. The plaintiff has shown no

manner in which the buyout discriminated against older employees or constituted part of the company's alleged plan to get rid of older employees.

Because the plaintiff has failed to show evidence indicating that the defendant's proffered legitimate nondiscriminatory reason for her termination was pretext for discrimination, her claim for wrongful termination in violation of the ADEA cannot move forward. She has been unable to show the existence of a genuine issue of material fact as to this claim. Summary judgment is appropriate, and the claim must be dismissed.

The plaintiff also brings a claim of wrongful termination in violation of Mississippi public policy, alleging that she was terminated for reporting the alleged criminal act of McWilliams. It has long been well-settled in Mississippi that "a contract for employment for an indefinite period may be terminated at the will of either party, whether the discharge is for any reason or no reason at all." *Community Care Center of Aberdeen v. Barrentine*, 160 So. 2d 216, 218 (Miss. 2015). The Mississippi Supreme Court, however, carved out a narrow public policy exception to the at-will employment doctrine in *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993), recognizing that an employer may not discharge an employee in retaliation for the employee's refusing to participate in illegal acts or reporting illegal acts of its employer. *Id.* at 606. This exception was further limited to "acts complained of [that] warrant the imposition of criminal penalties, as opposed to mere civil penalties." *Gray v. Town of Terry*, 196 So. 3d 211, 218 (Miss. App. 2016). "A plaintiff's subjective belief that the acts reported were illegal does not satisfy *McArn*; instead, the alleged act must actually be illegal." *McGrath v. Empire Inv. Holdings, LLC*, No. 1:11-CV-209-A-S, 2013 WL 85205, at *4 (N.D. Miss. Jan. 7, 2013) (citing *Wheeler v. BL Development Corp.*, 415 F.3d 399, 403 (5th Cir. 2005)).

This claim is wholly without merit. In addition to the fact that the plaintiff dropped her charges against McWilliams and in addition to the fact that no evidence in the form of witness testimony, surveillance video, or any other form beyond the plaintiff's own unsupported accusations has been presented showing that McWilliams committed any crime, the Mississippi Court of Appeals has held that the Mississippi statute which prohibits disturbing the peace refers solely to "the public peace or the peace of others." *Collins v. State*, 223 So. 2d 817, 821 (Miss. App. 2017). The only peace the plaintiff alleges was disturbed is that of her own. The plaintiff's affidavit plainly states McWilliams "disturb [sic] the peace of Margaret Inmon at 404 Mueller Brass Road by yelling at her and telling her to shut her mouth." Because the applicable statute requires a disturbance of the peace of more than one person, the statute was not violated. The plaintiff's filing of her police report against McWilliams therefore does not afford her protection under *McArn*. Accordingly, this claim should be dismissed.

## Conclusion

For the foregoing reasons, the court finds that the defendant's motion for summary judgment is well taken and should be granted. A separate order in accord with this opinion shall issue this day.

This, the 16th day of February, 2018.

                                                /s/ Neal Biggers
                                                NEAL B. BIGGERS, JR.
                                                UNITED STATES DISTRICT JUDGE